UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 05-21395-CIV-SEITZ/MCALILEY

GEORGE POWELL, et al.,

        Plaintiffs,

v.

CAREY INTERNATIONAL, INC., et al.,

        Defendants.
_____/

**ORDER GRANTING DEFENDANTS' MOTION TO EXCLUDE REPORT AND TESTIMONY OF PLAINTIFFS' DAMAGE REBUTTAL EXPERT DENNIS A. NORTH**

THIS MATTER is before the Court on Defendants' Motion to Exclude Report and Testimony of Plaintiffs' Damage Rebuttal Expert Dennis A. North ("Defendants' Motion") [DE 277]. Defendants seek to exclude Mr. North's report and testimony the grounds that the legal conclusions underlying his report do not fit this case and his testimony will not assist a trier of fact.[1] Having reviewed the motion, the response and the reply thereto, the report and the entire factual record, Defendants' Motion is granted.

**I.  Background**

Plaintiffs, limousine drivers, seek overtime pay under the Fair Labor Standards Act, from Defendants, who were involved in the limousine transport business at the time relevant to this lawsuit.[2] After extensive procedural activities, both the Plaintiffs and Defendants sought summary judgment as to the calculation of the overtime hourly wage and a determination of which activities are compensable. In

---

[1] When Defendants filed the instant motion, Vince Wolfington was a Defendant along with Carey International, Inc. and Carey Limousine Florida, Inc. ("Carey South Florida"). However, Wolfington has since been dismissed from the action. (*See* DE 371.)

[2] The Plaintiffs fall into one of two categories of job classification: Independent Operators ("I/O's") - drivers that own or lease their own car, or House Chauffeurs - drivers that use cars owned or leased by Carey South Florida.

support of their motion, Defendants hired an expert to contest Plaintiffs' claims. To rebut Defendants' expert's opinions, Plaintiffs submitted Mr. North's report and testimony with Plaintiffs' calculation of unpaid wages due Plaintiffs.[3]

The Court's February 1, 2007 Order on the parties' cross-summary judgment motions, altered the legal landscape of this case. Specifically, the Court ruled that 29 C.F.R. §778.112 governs this case, and therefore, Plaintiffs' regular hourly rate should be calculated on a per job basis, which means that any overtime hours worked are compensated at one half of the regular hourly rate of pay multiplied by the number of hours worked overtime. Additionally, the Court found that Plaintiffs were entitled to be compensated for the following activities: driving with customers in the vehicle, driving between jobs, attending mandatory meetings, waiting for customers or being engaged to wait, and waiting for no-shows or cancellations. Plaintiffs were not entitled to be compensated for commutes between work and home and time spent changing clothes. Also, the I/O's were not entitled to compensation for time spent cleaning, inspecting or maintaining their vehicle. The Court also found that issues of fact remain as to the compensability of the following activities: the time spent obtaining and placing amenities in vehicles; the time that Carey House Chauffeurs spent cleaning, inspecting and maintaining the Defendants' vehicles; the time spent calling dispatch and checking flight times; and the time spent "waiting to be engaged." Mr. North's calculations do not use either the appropriate hourly rate nor address the compensable activities as determined in the February 1, 2007 Order.

### A.     North's Expertise

North obtained an accounting degree from Florida State University in 1977 and became a C.P.A. in 1981.[4] Upon graduation, North worked as a compliance auditor for Barnett Banks of Florida. From

---

[3] Plaintiffs sought to supplement North's Report on February 15, 2007, three months after the deadline for submission of the report. (*See* DE 346.)

[4] North does not have any advanced degrees or a legal degree. (Report at 1.)

2

1980 until 1989, North was a manager in the emerging business department of accounting firm Deloitte Haskins & Sells. In 1989, North became the controller for Bennett Auto Supply, Inc. ("Bennett") and from 1992 to November 2006, he served as Bennett's chief financial officer. Upon leaving Bennett, North states that he formed Dennis A. North, C.P.A., LLC.[5]

North has never been hired as an expert, never prepared an expert report and never testified in any litigation. (Defendants' Motion, Exh. B at 52-54.) He acknowledges that he is not an expert on the FLSA or employment law, does not have any legal expertise, and in fact did not take any employment law courses in connection with his accounting degree. (*Id.* at 54, 144-45, 162, 212-13.) North's only experience with any employees who were paid a day or job rate was when he worked at Bennett. (*Id.* at 26-33.) Bennett had four drivers who were paid by the trip, regardless of how many hours they worked. (*Id.* at 30.) Other than these employees, North's only experience with the FLSA was in his capacity as controller or corporate financial officer involving hourly, salaried or commission employees who worked for Bennett. (*Id.* at 26-33.)

**B.    North's Opinions**

North's opinion rests on the premise that 29 C.F.R. §778.112 does not apply, although North acknowledges that he consulted attorneys to resolve any FLSA issues. (*Id.* at 26-33.) North concluded that §778.112 does not apply because Plaintiffs did not know what they are getting paid each day or the rate a particular job gets billed to the customer. (Report at 7.) North also opines that Defendants' expert report is flawed because it does not include significant amounts of compensable time. (*Id.*) His rebuttal analysis concluded there were seven categories of compensable activities which should be included in the hour calculations that the driver has worked. (Report at 6.) North expressly stated that in his opinion,

---

[5] Defendants point out that North's LLC application was initially rejected by the Department of State and although it is now registered, North has not yet signed a lease or moved into any office space despite identifying his intended business address with the Florida Department of State. (Defendants' Motion, Exh. B at 50-52.)

3

"for an employer and an employee to agree on a job rate, that agreement has to be express [sic] between the parties." (*Id.* at 7-8.) He also concluded that Plaintiffs were given other forms of compensation such that §778.112 is inapplicable. (*Id.* at 7.)

Furthermore, North's report relied upon Plaintiffs' interrogatory and unspecified deposition testimony for estimates of the average weekly hours that each Plaintiff provided chauffeured transportation services.[6] (Report at 2.) North only reviewed the portions of the depositions Plaintiff's counsel gave to him, did not evaluate whether any other documents verified the hours that Plaintiffs claimed they worked, such as Defendants business records documenting the hours Plaintiffs worked or Plaintiffs' own records indicating how long they performed jobs. (Defendants' Response, Exh. B at 24-28, 81.) North acknowledged that he needed additional information to verify the reliability of his calculation of damages for the six year statute of limitations claim and that there were numerical errors on the face of his report that needed to be corrected. (*Id.* at 193, 195.)

Based upon his legal assumptions and data Plaintiffs' counsel provided, North made three estimates of Plaintiffs' compensation for unpaid overtime wages. He used a two, a three and a six year statute of limitations, and for each time period, he applied three different methods of calculating the regular rate. He divided the weekly pay (1) by 40 hours, (2) by the average hours that Plaintiffs estimated that they drove passengers, and (3) by the total hours that Plaintiffs claim that they were working for Carey. (*Id.* at 9-13.) North then calculated the overtime rate at one and a half times each of these three hourly rates. (*Id.*)

## II.     Legal Standard

The Federal Rules of Evidence assign to the trial judge the gatekeeper task of ensuring that an expert's testimony, whether scientific of non-scientific, rests on a reliable foundation and is relevant to

---

[6] Defendants point out that North was not aware that at least one Plaintiff, Mark Donahay, testified differently in his deposition and interrogatory response about the number of hours worked.

the task at hand. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141, 148-49 (U.S. 1999); *Corwin v. Walt Disney World Co.*, 475 F.3d 1239, 1250 (11th Cir. 2007). In determining the admissibility of expert testimony under Federal Rule of Evidence 702, a trial court in the Eleventh Circuit must conduct "a rigorous" three-part inquiry" considering whether: (1) the expert is qualified to testify competently regarding the matters intended to be addressed; (2) the methodology used to reach conclusions is sufficiently reliable, as determined by the sort of inquiry mandated in *Daubert*;[7] and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue. *City of Tuscaloosa v. Harcros Chems., Inc.*, 158 F.3d 548, 562 (11th Cir. 1998). The party offering the expert bears the burden of laying the proper foundation for the admission of expert testimony and must prove the admissibility by a preponderance of the evidence. *Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1306 (11th Cir. 1999). A district court has considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable, and that discretion is given a large degree of deference. *McDowell v. Brown*, 392 F.3d 1283, 1299 (11th Cir. 2004).

**III.  Discussion**

Defendants argue both that North's Report and testimony are not reliable and will not assist a trier of fact. Expert testimony must be excluded if the reasoning or methodology underlying the opinion is scientifically invalid, or if the methodology cannot properly be applied to the facts of the case. *Club Car, Inc. v. Club Car (Quebec) Imp., Inc.*, 362 F.3d 775, 780 (11th Cir. 2004). The factors that bear on whether an expert's reasoning or methodology is reliable include whether the theory or technique can be tested; whether it has been subjected to peer review; the known or potential rate of error of the technique; the existence and maintenance of standards controlling the technique's operation; and the degree to

---

[7]  *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993).

which the relevant scientific community accepts the theory or technique as reliable.  *City of Tuscaloosa*,158 F.3d at 563 (citing *Daubert*, 509 U.S. at 589).

There is no serious issue that North is qualified as a C.P.A.  However, his opinion does not apply accounting principles, other than basic mathematical functions, and instead consists of legal conclusions for which he has neither the background, education or experience to make.[8]  While he states that he relied on the legal conclusions of Plaintiffs' counsel, those legal conclusions are contrary to the legal determinations governing this case.  It is these improper legal conclusions that are the foundation of his methodology in calculating Plaintiffs' overtime wages.  Specifically, because North concluded that §778.112 is not applicable, he calculated the overtime hourly wage at one and a half times the regular hourly wage, as opposed to half the regular hourly wage as is proper under §778.112.  However, the law of the case is that §778.112 <u>is applicable</u> because Plaintiffs were paid by the job.  Furthermore, North has included in his calculation of unpaid overtime wages various items that the Court ruled may or may not be compensable depending on the resolution of certain issues of fact, such as the time spent doing vehicle maintenance, placing amenities in the car, and fueling the vehicle.  Thus, because North's legal assumptions are at odds with the law of the case, his wage calculations are not applicable to the disputed issues in this case.

Consequently, because the premise of North's opinion is fundamentally flawed and directly contrary to the law of the case, his report and testimony would not aid a trier of fact in determining how much Plaintiffs are owed in unpaid wages.  Additionally, the factual determination of how many

---

[8]  Illustrated examples of North's legal conclusions include: (1) his determination that §778.112 is not applicable "based on the method the drivers are paid by [Carey South Florida] and the fact that they do not know what they are getting paid each day or know the rate a particular job gets billed to the customer;" (2) his conclusion that other payments to Plaintiffs constituted "other forms of compensation" for the purposes of §778.112; (3) his determinations as to which activities were an "integral part of the driver's job" for purposes of determining which activities are compensable; and (4) his determination that Plaintiffs were given "other form[s] of compensation" such that §778.112 is inapplicable.

compensable hours for which Defendants owe Plaintiffs overtime compensation is merely an arithmetic calculation that the jury can make with a calculator rather than requiring an expert accountant. Thus, North's Report and expert opinion must be excluded.[9]

**IV.     Conclusion**

For the reasons set forth herein, it is hereby

ORDERED that

(1)     Defendants' Motion to Exclude Report and Testimony of Plaintiffs' Damage Rebuttal Expert Dennis A. North [DE 277] is GRANTED.  North may not testify at trial.

(2)     Plaintiffs' Supplemental Response to Defendants' Motion to Exclude Report and Testimony of Plaintiffs' Damage Rebuttal Expert Dennis A. North [DE 346] is STRICKEN.

DONE and ORDERED at Miami, Florida this 9th day of April, 2007.

*[signature]*

PATRICIA A. SEITZ
UNITED STATES DISTRICT JUDGE

cc:
Counsel of Record

---

[9] After the Court ruled on the parties' cross-motions for summary judgment, Plaintiffs filed a new expert report that attempts to conform to the Court's Order. (*See* DE 346.) However, such report merely provides a calculation that the jury is competent to complete. Additionally, the fact remains that the new report was also based on Plaintiffs' uncorroborated estimation of the hours that they worked. Finally, Plaintiffs have not shown good cause for submitting the report three months after it was due. *See* Fed. R. Civ. P. 16(b). Consequently, because the supplemental report does not aid a trier of fact and was not filed timely, such report is stricken. *Id.*; *see also Walter Kidde Portable Equip., Inc. v. Universal Sec. Instruments, Inc.*, 2007 U.S. App. LEXIS 4756, 6-7 (Fed. Cir. 2007) (confirming district court's discretion to exclude an untimely expert report.)